UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     (IN CHAMBERS) Order Re: Defendants' Motion for Summary Judgment [DE 88]

## I.     INTRODUCTION

On July 24, 2023, Frances Enyart, individually and as a successor in interest to William Enyart; Gregory Enyart; and Amanda Kelley, as guardian ad litem to A.E. (collectively, "Plaintiffs") filed the operative First Amended Complaint ("FAC") against San Bernardino County (the "County") and numerous individual County employees (collectively, "Defendants") asserting claims under 42 U.S.C. § 1983 and California law arising out of William Enyart's death while in County custody. (ECF No. 38.)

After filing the FAC, Plaintiffs dismissed one County employee and two § 1983 claims. (ECF Nos. 47, 73.) Four individual defendants remain in the action: (1) Deputy Ronald Conley; (2) Deputy Cara Umphlett; (3) Deputy Troy Skaggs; and (4) Sheriff's Custody Specialist April Snow (collectively, the "Individual Defendants"). Plaintiffs' remaining federal claims are: (1) a claim on William Enyart's behalf against the Individual Defendants for inadequate medical care; (2) a claim on William Enyart's behalf against the County for inadequate policy and training; and (3) Frances Enyart, Gregory Enyart, and A.E.'s claim against all Defendants for loss of familial association.

Defendants move for summary judgment with respect to the remaining federal claims and ask the Court to decline supplemental jurisdiction over the state law claims if it dismisses all federal claims. For the following reasons, the Court **GRANTS** the Motion **in part**.

## II.     FACTUAL BACKGROUND

The following facts are undisputed[1] unless otherwise noted:

---

[1] The parties make numerous objections to the evidence presented in support of and opposition to the Motion. To the extent the Court relies upon evidence to which the parties have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which the parties have objected, the objections are **DENIED** as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

    William Enyart ("William") died on August 1, 2022 while incarcerated in a County jail. Plaintiffs are William's mother, Frances ("Mrs. Enyart"), on behalf of herself and as a successor in interest to William's estate; William's father, Gregory ("Mr. Enyart"); and William's sister, Amanda, proceeding as guardian ad litem for William's minor daughter, A.E.

    William was arrested at his family's home in Apple Valley, California on July 27, 2022. That day, William became upset after his parents and siblings confronted him about his excessive alcohol use. (Ramirez Decl., Ex. 1 at 24:17–25:18, ECF No. 88-16.)[2] The conflict between William and his family apparently escalated quickly, leading Mr. Enyart to call the local police for assistance. (*Id.*; Conley Decl. ¶ 3, ECF No. 88-2.)

    Deputy Ronald Conley was the first officer to arrive at the Enyarts' residence. (Conley Decl. ¶ 3.) Conley approached William and a physical struggle ensued. (*Id.* ¶ 7.) Conley requested backup assistance. (*Id.* ¶ 9.) During his contact with William, Conley smelled alcohol on William's breath and believed William was intoxicated. (*Id.* ¶ 14.)

    Deputy Cara Umphlett was one of the officers who responded to Conley's backup request. (Umphlett Decl. ¶ 3, ECF No. 88-3.) Although Umphlett observed Conley's interactions with William from a distance, she did not interact with William directly. (*Id.* ¶¶ 4, 16.) Instead, Umphlett investigated by speaking with William's family. (*Id.* ¶ 11.) While speaking with Umphlett, Mrs. Enyart expressed her belief that William was at risk to suffer fatal alcohol withdrawal symptoms like cardiac arrest or seizure. (Pena Decl., Ex. 4 at 77:7–78:15, ECF No. 96-2.) Mrs. Enyart told Umphlett that William should be hospitalized so that he could be monitored for these life-threatening symptoms. (*Id.*) It is unclear if Umphlett relayed this information to Conley.

    Paramedics were also dispatched to the Enyart residence. (Conley Decl. ¶ 13.) William refused to answer the paramedics' questions regarding his use of drugs or alcohol. (Cuevas Decl. ¶ 8, ECF No. 88-5.) Ultimately, the paramedics determined that William was in stable condition and cleared him for arrest. (Conley Decl. ¶ 13.)

    After William was examined by the paramedics, Conley transported him to the High Desert Detention Center ("HDDC") for booking. (Conley Decl. ¶ 15.) Conley was present for William's medical evaluation at his intake screening. (*Id.* ¶ 16.) During this screening, William denied using drugs or alcohol. (Alvarado Decl. ¶ 10, ECF No. 88-6.) Conley did not relay any information about William's alcohol use to the medical staff. (Conley Decl. ¶ 17.) The County's intake procedures also require the

---

[2] The parties each include entries in their filings that contain multiple documents within a single ECF attachment. (*See, e.g.*, ECF Nos. 88-16, 96-2.) These filings contravene the Court's Standing Order, which instructs parties to file "**each supporting document . . . as an individual attachment, such that each document can be accessed by its own individual link.**" (Standing Order at 4, ECF No. 25 (emphasis in original)). Accordingly, several citations to the record share the same ECF number.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

arresting officer to complete a questionnaire. (Pena Decl., Ex. 11, ECF No. 96-2.) In the questionnaire, Conley answered, "no" when asked if he was aware of William being under the influence of drugs or alcohol. (Pena Decl., Ex. 11, ECF No. 96-2.)

In the hours after William's arrest, Mr. and Mrs. Enyart spoke with Conley over the phone. (Pena Decl., Ex. 4 at 60:14–25.) During that conversation, they told Conley that they were concerned that William could suffer serious symptoms from alcohol withdrawal. (*Id.*) It does not appear that Conley documented these concerns or relayed them to any other County employee.

In addition to speaking with Conley, Mr. and Mrs. Enyart made numerous phone calls to the County jail and other related entities between July 28, 2022 and August 1, 2022. (Pena Decl., Ex. 13, ECF No. 96-2.) Each time they called, Mr. and Mrs. Enyart expressed their concern that William could suffer from alcohol withdrawal while incarcerated and cautioned that William "could have a heart attack, stroke, or seizure." (Pena Decl., Ex. 4 at 115:10–18.)

Deputy Troy Skaggs and Sheriff's Custody Specialist April Snow were two of the employees who spoke with the Enyarts. As a deputy assigned to HDDC, Skaggs assisted in the intake and supervision of detainees. (Skaggs Decl. ¶ 2.) As a sheriff's custody specialist, Snow assisted in numerous support functions, including maintaining and updating detainees' files and ensuring the accuracy of booking paperwork. (Snow Decl. ¶ 3.)

Neither Skaggs nor Snow recalls speaking with the Enyarts, and it appears neither made any effort to investigate William's circumstances or relay the Enyarts' concerns to the relevant medical staff. (Skaggs Decl. ¶ 5, ECF No. 88-13; Snow Decl. ¶ 8, ECF No. 88-14.) Although both Skaggs and Snow have testified that they believed the Enyarts could have alerted jail medical staff of their concerns by filling out the required paperwork, it appears neither employee made the Enyarts aware of this administrative process. (Skaggs Decl. ¶ 10; Snow Decl. ¶ 14; Pena Decl., Ex. 16 at 38:14–24, ECF No. 108.)

By July 30, 2022, William was exhibiting strange behavior and appeared "manic," "disorganized," "paranoid[,] and delusional" (Pena Decl., Ex. 17, ECF No. 96-3; Zhou Decl. ¶ 7, ECF No. 88-8.) Because of these symptoms, the County transferred William to West Valley Detention Center ("WVDC")—a facility with more robust medical and mental healthcare services than HDDC. At WVDC, William continued to deny that he had a history of alcohol abuse. (Zhou Decl. ¶ 8.) Between July 30, 2022 and August 1, 2022, William's health continued to decline. (Pena Decl., Ex. 29, ECF No. 96-3.) He died in a cell at WVDC on August 1, 2022. (A. Garcia Decl. ¶ 6, ECF No. 88-12.)

Plaintiffs are not the first to allege that the County does not adequately relay potentially life-saving medical information from third parties to the appropriate jail staff. For example, in 2018, a County detainee's friend allegedly told police that the detainee required close monitoring because of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

suspected heroin use and risk of suicide. (Brunner Decl. ¶ 5, ECF No. 96-4.) Police did not relay this information to the intake deputy, and the detainee died by suicide in County custody roughly one week later. (*Id.*) Similarly, in 2017, an arrestee's mother and sister allegedly told police that he required urgent medical attention. (*Id.* ¶ 6.) This information was not relayed to jail staff, and the arrestee died shortly after being booked into jail. (*Id.*) Despite these previous incidents, the County "has no express policy on how third-party or family members' communications must be handled by jail staff." (Scalise Decl. ¶ 3, ECF No. 88-15.)

### III.    JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

On issues where the moving party does not have the burden of proof at trial, the moving party is required to show that no evidence supports the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat a summary judgment motion, the nonmoving party may not merely rely on his pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmoving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the nonmoving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating evidence at the summary judgment stage, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

### IV.    DISCUSSION

Before delving into the merits of the Motion, the Court first notes that Defendants filed this Motion just two days after meeting and conferring with opposing counsel. Under the Local Rules, a party must meet and confer with opposing counsel at least seven days prior to filing a motion. C.D. Cal. L.R. 7-3. Defendants provide no explanation for this procedural deficiency. Although the Court could deny the Motion on these grounds alone, considering its merits serves the interests of judicial economy because resolution of the Motion could narrow the scope of the trial. The Court warns the parties, however, that it expects strict compliance with all procedural rules and may impose sanctions for future violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

Plaintiffs assert § 1983 claims against both the Individual Defendants and the County. The Court begins by addressing the claims against the Individual Defendants.

**A.   Individual Defendants**

Plaintiffs assert two § 1983 claims against the Individual Defendants. First, Plaintiffs allege that the Individual Defendants violated William's Fourteenth Amendment right to receive adequate medical care[3] while in County custody. Second, Plaintiffs allege that the Individual Defendants violated Mrs. Enyart, Mr. Enyart, and A.E.'s Fourteenth Amendment rights by depriving them of "familial association" with William without due process of law. The Individual Defendants move for summary judgment on both claims, and additionally ask the Court to find that they are entitled to qualified immunity.

Plaintiffs have apparently abandoned the familial association claim, as they do not address arguments about this claim in their Opposition. *See* C.D. Cal. L.R. 7-12; *Shorter v. L.A. Unified Sch. Dist.*, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (construing a plaintiff's failure to address arguments in opposition as "waiver or abandonment of those issues warranting dismissal of her claims."). Accordingly, the Court **GRANTS** the Motion with respect to the familial association claim and **DISMISSES** the claim. The Court next addresses the inadequate medical care claim and the issue of qualified immunity.

   1.   *Inadequate Medical Care*

Under the Eighth Amendment's prohibition on cruel and unusual punishment, the government's "deliberate indifference to" an incarcerated person's "serious medical needs" is a violation of his constitutional rights. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the rights of pretrial detainees are governed by the Fourteenth, rather than Eighth, Amendment, "the due process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). A plaintiff asserting a claim premised upon the inadequate medical care offered to a pretrial detainee must show that:

---

[3] Because the Individual Defendants are not medical care providers, Plaintiffs' claim for inadequate medical care would be more accurately styled as a claim for deliberate indifference to serious medical need. Claims for inadequate medical care and deliberate indifference are both cognizable claims under 42 U.S.C. § 1983 and are assessed using a similar standard. *See Conn v. City of Reno*, 572 F.3d 1047, 1055 (9th Cir. 2009), *vacated in part*, 658 F.3d 897 (9th Cir. 2011) (evaluating § 1983 claim against police officers who were allegedly deliberately indifferent to a detainee's serious medical needs using the same standard as a claim "predicated upon the failure to provide medical treatment."). Because the claims are functionally similar and Defendants do not dispute that Plaintiffs' have stated a cognizable claim, the Court adopts Plaintiffs' styling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

(i) the defendant made an intentional decision with respect to the conditions under which the [detainee] was confined;

(ii) those conditions put the [detainee] at substantial risk of suffering serious harm;

(iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(iv) by not taking such measures, the defendant caused the [detainee's] injuries.

*Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (citing *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)). To establish the third element, "a plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks omitted).

Here, Plaintiffs contend that the Individual Defendants violated William's constitutional rights when they failed to respond to Mr. and Mrs. Enyart's concerns that he could suffer from fatal alcohol withdrawal symptoms while in County custody. The Individual Defendants argue that summary judgment on this claim is warranted because they each lacked the necessary mental state for a finding of liability. Without any citation to legal authority in support of their position, the Individual Defendants argue that any failure to relay information to jail medical staff was negligent at worst.

This argument is unpersuasive. Considered in the light most favorable to Plaintiffs, the evidence indicates that a reasonable person in each of the Individual Defendants' positions would have known that William "faced a substantial risk of suffering serious harm." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 670 (9th Cir. 2021) (quoting *Gordon*, 888 F.3d at 1125) (internal quotation marks omitted).

Begin with Conley, who answered "no" when asked if William was under the influence of alcohol during the intake screening at HDDC, despite recently observing William's intoxication. Although Conley contends that he had no knowledge of William's alcohol use, Mrs. Enyart has testified that shortly after William's arrest, she and Mr. Enyart told Conley they were concerned that William would suffer fatal alcohol withdrawal symptoms. A jury considering this evidence could reasonably conclude that Conley failed to take "reasonable available measures to abate" William's alcohol related health risks when he did not relay this information to jail staff, and that his failure amounted to reckless disregard for William's wellbeing. *Russell*, 31 F.4th at 739.

Regarding Umphlett, it is not clear that she relayed the Enyarts' concerns to Conley or the paramedics. Umphlett's statements on this point have been inconsistent, since she has stated both that she probably did convey information about William's alcohol use to Conley and that she definitively did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

not share this information with him. (Pena Decl., Ex. 8 at 11, ECF No. 96-2; Umphlett Decl. ¶ 16.) Based on these conflicting statements, a jury could reasonably conclude that Umphlett failed to relay potentially life-saving information about William's medical history and that this failure demonstrated a reckless disregard for William's health.

Finally, although Skaggs and Snow each contend that they do not remember speaking to the Enyarts, they argue that any alleged failure to act after learning of the Enyarts' concerns would not be actionable because they reasonably believed that (1) an incarcerated person in County custody would receive adequate medical care and (2) family members of incarcerated individuals may convey important medical information to jail medical staff by filling out the appropriate form. According to the Enyarts, however, neither Skaggs nor Snow ever made them aware of a medical form. In fact, even though Skaggs and Snow's duties involved accurately collecting information about people in County custody, Defendants offer no evidence that indicates Skaggs or Snow took any action whatsoever after speaking with the Enyarts. A jury could reasonably conclude that Skaggs and Snow completely ignored the Enyarts' concerns, and therefore demonstrated reckless disregard for William's health. *See Sandoval*, 985 F.3d at 680 (reasoning that a prison official could be held liable for denying medical care to a detainee if he "made essentially no effort" to determine why the detainee was exhibiting symptoms and "failed to pass along any information" to other staff members).

This case is not dissimilar to *Conn v. City of Reno*, 572 F.3d 1047 (9th Cir. 2009), *vacated in part*, 658 F.3d 897 (9th Cir. 2011). In *Conn*, police officers witnessed an arrestee threaten to kill herself and attempt to wrap a seatbelt around her neck while being transported to a detention facility. *Id.* at 1050–51. Because the officers did not notify jail personnel of what they had seen, the arrestee was taken into custody without being placed on suicide watch and died by suicide shortly after. *Id.* at 1051. The Ninth Circuit determined that the officers were not entitled to summary judgment on the plaintiffs' claim that they were deliberately indifferent to the arrestee's serious medical need. *Id.* at 1058.[4]

Defendants argue that *Conn* is distinguishable from the present case because the officers in *Conn* "personally knew" and "personally witnessed" the arrestee's troubling behavior, unlike the Individual Defendants who lacked "personal knowledge" of William's health risks. (Reply at 3–4, ECF No. 100.) This argument is puzzling considering Plaintiffs' allegations that Conley, Umphlett, Skaggs, and Snow each spoke with the Enyarts about their concerns. In other words, Plaintiffs allege that each Individual Defendant had personal knowledge of the Enyarts' concern that William could suffer life-threatening alcohol withdrawal symptoms. Taken to its logical conclusion, Defendants' argument suggests that if the officers in *Conn* had merely been told by the arrestee's family that she had recently attempted suicide,

---

[4] It is worth noting that when *Conn* was decided, a plaintiff asserting a claim for inadequate medical care was required to demonstrate that a defendant was subjectively aware of his serious medical need. *Conn*, 572 F.3d at 1056. This subjective standard has since been replaced by a less demanding objective standard. *Gordon*, 888 F.3d at 1124–25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

the officers would not have been responsible for relaying that information to jail staff. Nothing about the reasoning in *Conn* suggests that it should be interpreted so narrowly.

The Individual Defendants also suggest that they did not demonstrate a reckless disregard for William's medical needs because they relied upon the County's intake procedures. To the extent that the Individual Defendants argue that relying on William to identify himself as an alcoholic was sufficient to protect his constitutional right to adequate medical care, this argument fails. A jury could reasonably conclude that the Enyarts' concerns should have been communicated regardless of the County's screening procedures because it is foreseeable that an individual would not be forthcoming about his alcohol abuse. To the extent that the Individual Defendants argue that they relied upon other County employees to conduct a more thorough substance abuse screen, the evidence is unclear regarding the reasonableness of this reliance. In short, a triable issue of fact exists with respect to whether the Individual Defendants acted with reckless disregard for William's health.

2.  *Qualified Immunity*

The Individual Defendants additionally argue that even if William's constitutional rights were violated, qualified immunity shields them from any liability. "Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, the Individual Defendants are not entitled to qualified immunity at summary judgment "only if (1) the facts alleged, taken in the light most favorable to [Plaintiffs], show that [Defendants] violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that [Defendants] would have understood [their] conduct to be unlawful in that situation." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017) (citing *Hughes v. Kisela*, 862 F.3d 775, 783 (9th Cir. 2016)).

As discussed above, a jury considering the evidence in the light most favorable to Plaintiffs could determine that Conley, Umphlett, Skaggs, and Snow each violated William's constitutional right to receive adequate medical care while incarcerated. Therefore, Plaintiffs have satisfied the first requirement to deny the Individual Defendants qualified immunity at summary judgment.

A court's analysis of whether a right was clearly established should not be conducted "at a high level of generality." *Russell*, 31 F.4th at 737 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). Instead, a Court should determine whether a defendant "had fair notice that her conduct was unlawful, for example, through any cases of controlling authority in their jurisdiction at the time of the incident." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019). Such fair notice does not require a previous case with an identical or nearly identical factual basis. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

The Individual Defendants argue that William did not have a "clearly established constitutional right to have family members [sic] reports of [his] anticipated needed medical care . . . forwarded to medical staff when medical staff was known to have personally evaluated and interviewed [him]." (Mot. at 19.) The Court disagrees that the constitutional right at issue should be defined so narrowly. Instead, the proper inquiry is whether a reasonable person in the same circumstances as Conley, Umphlett, Skaggs, or Snow would have understood that failing to relay Mr. and Mrs. Enyart's concerns "presented such a risk of harm" to William that their failure to act was unconstitutional. *Sandoval*, 985 F.3d at 678.

The Ninth Circuit recently addressed the issue of qualified immunity in the context of alleged indifference to a detainee's medical needs in *Sandoval v. County of San Diego*, 985 F.3d 657. In that case, the court recognized that it had "never before addressed the specific factual circumstances" at issue. *Id.* at 680. Nevertheless, the court reasoned that the defendant was "not entitled to qualified immunity simply because the very action in question ha[d] not previously been held unlawful." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (cleaned up). The court then summarized numerous cases in which government officials violated constitutional rights by offering inadequate medical care, stating, "[t]he rule reflected in these decisions is clear: a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Id.*

Drawing all inferences in Plaintiffs' favor, a jury could conclude that Conley, Umphlett, Skaggs, and Snow each ignored warnings that William could suffer potentially fatal symptoms from alcohol withdrawal. In other words, a triable issue of fact remains as to whether the Individual Defendants were aware of a "serious acute medical condition" and "st[ood] idly by rather than responding with reasonable diligence to treat the condition." *Id.* Accordingly, granting qualified immunity at the summary judgment stage is improper. Having found no basis to grant summary judgment on the inadequate medical care claim, the Court **DENIES** the Motion with respect to the claim.

**B.  County**

Although a municipal entity cannot be held vicariously liable for an individual employee's § 1983 violation, a plaintiff may sue the entity directly if the entity's policies violate constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). "A policy can be one of action or inaction." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiffs assert a claim against the County under § 1983 for maintaining an inadequate policy and failing to train its employees regarding the handling of a detainee's medical information. A plaintiff asserting a claim premised upon a policy of inaction must demonstrate: "(1) that a county employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." *Long*, 442 F.3d at 1186. Plaintiffs have provided evidence to support this claim. As discussed above, the parties genuinely dispute whether the County violated William's constitutional rights. Additionally, Plaintiffs have submitted evidence that the County's failure to promulgate a policy regarding third party medical information amounts to deliberate indifference, since several detainees have allegedly died under circumstances like those at issue here. Plaintiffs reasonably suggest that the absence of any policy was "the moving force" behind the alleged violation of William's rights. *Id.*

The County does not appear to argue that Plaintiffs have failed to demonstrate the necessary elements of their claim. Instead, the County argues that it is not obligated to promulgate a policy ensuring that third party information regarding a detainee's medical needs is relayed to the relevant jail staff because there is no explicit legal authority mandating such a policy. The County additionally argues that it adequately trains its employees to conduct initial health screenings during intake and provide additional health services to detainees who appear to be under the influence of drugs or alcohol. According to the County, Plaintiffs' claim cannot survive in the face of these plainly constitutional policies.

The County's arguments miss the mark. It should go without saying that the County's obligation to safeguard the constitutional rights of those in its custody extends beyond simply promulgating policies explicitly required by law. The Court is not aware of—and the County does not cite—any legal authority for the proposition that the contours of constitutional rights are exclusively defined by existing caselaw or statutes. The County's reliance on the constitutionality of its existing policies and adequacy of its training to implement these policies is also misplaced. Plaintiffs do not contend that the County's policies are unconstitutional—they contend that the policies are inadequate. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1186 (9th Cir. 2022) ("[A] plaintiff can allege that through its *omissions* the municipality is responsible for a constitutional violation . . . .") (emphasis in original). It necessarily follows that the County could not have trained its employees to execute a nonexistent policy.[5]

In short, there is a triable issue of fact with respect to the County's liability for its alleged policy of inaction. Accordingly, the Court **DENIES** the Motion with respect to this claim.

---

[5] Plaintiffs appear to argue that if they cannot assert a claim premised upon the County's allegedly inadequate policy and training, they can assert a claim for "single instance" liability under *Board of County Commissioners of Bryan County. v. Brown*, 520 U.S. 397, 410–11 (1997). Because the County fails to show that its policy is indisputably adequate to protect detainees' constitutional rights, the Court need not address the viability of Plaintiffs' single instance theory at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00540-RGK-SHK | Date | April 22, 2024 |
|---|---|---|---|
| Title | *Frances Enyart et al. v. County of San Bernardino et al.* | | |

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion **in part** and **DISMISSES** the familial association claim asserted against the Individual Defendants. The Court **DENIES** the Motion with respect to all other claims. Two federal claims remain in this action: (1) the claim for inadequate medical care asserted against the Individual Defendants and (2) the claim for inadequate policy and training asserted against the County. The Court will exercise supplemental jurisdiction over the related state law claims.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | | JRE/ak |