Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Grace Jun, Esq., SBN 287973
grace@gracejunlaw.com
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (310) 709-4012

Joseph M. McMullen, Esq., SBN 246757
joe@jmm-legal.com
Law Offices of Joseph M. McMullen
501 West Broadway, Suite 1510
San Diego, CA 92101
Telephone:  (619) 501-2000
Facsimile:   (619) 615-2264

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCES ENYART, Individually, and as Successor in Interest to WILLIAM ENYART, et al., | Case No. 5:23-cv-00540-RGK-SHK |
| Plaintiffs, | **PLAINTIFF'S MOTION FOR ATTORNEY FEES** |
| v. | Date:      November 25, 2024<br>Time:      9:00 a.m.<br>Dept.:      850<br>Judge:     Hon. R. Gary Klausner |
| COUNTY OF SAN BERNARDINO, AARON CONLEY, DEPUTY C. UMPHLETT, ROD SKAGGS, DEPUTY SNOW, DEPUTY SILVA, and DOES 1-10, inclusive, | |
| Defendants. | |

1

**TABLE OF CONTENTS**

I. INTRODUCTION .......................................................................................... 6

II. THE LEGAL STANDARD ........................................................................ 7

III. PLAINTIFF IS THE PREVAILING PARTY ...................................... 8

IV. PLAINTIFF IS ENTITLED TO LODESTAR BASED ATTORNEYS' FEES .. 9

    A.    *The Hourly Rates of Plaintiff's Legal Team Are Appropriate Given Counsels' Skill, Experience and Reputation in the Civil Rights Community* ........ 9

    B.    *Defendants Aggressively Litigated This Case, And Continue to Do So* ....... 13

    C.    *The Number of Hours are Reasonable and Necessary* .............................. 14

    D.    *Plaintiff's Counsel Has Exercised Reasonable Billing Judgment* ............. 16

V. PLAINTIFF'S REQUESTED FEES SHOULD NOT BE REDUCED FOR NOT SUCCEEDING ON CO-PLAINTIFFS' CLAIMS ................................................ 19

VI. PLAINTIFFS' LITIGATION EXPENSES, WHICH WERE REASONABLE AND NECESSARY, ARE FULLY RECOVERABLE ........................................... 22

VII. CONCLUSION ........................................................................................ 23

MOTION FOR ATTORNEY FEES               5:23-CV-00540-RGK-SHK

1

**TABLE OF AUTHORITIES**

2

**CASES**

3   *Barjon v. Dalton*

4       132 F.3d 496, 500 (9th Cir. 1997) ....................................................... 10

5   *Blum v. Stenson*

6       465 U.S. 886, 888 (1984) ............................................................... 9, 10

7   *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health &*

8       *Human Res.*

9       532 U.S. 598 (2001) ......................................................................... 8

10  *Chalmers v. City of Los Angeles*

11      796 F.2d 1205, 1216, fn. 7 (9th Cir. 1986) ..................................... 22

12  *Charles v. Daley*

13      846 F.2d 1057 (7th Cir. 1988) ........................................................ 7

14  *Christiansburg Garment Co. v. E.E.O.C.*

15      434 U.S. 412 (1978) ......................................................................... 7

16  *City of Riverside v. Rivera*

17      477 U.S. 561 (1986) ......................................................................... 8

18  *Davis v. City of San Francisco*

19      976 F.2d 1536, 1545 (9th Cir. 1992) .............................................. 10

20  *D'Emanuele v. Montgomery Ward & Co.*

21      904 F.2d 1379, 1384 (9th Cir. 1990) .............................................. 10

22  *Farrar v. Hobby*

23      506 U.S. 103 (1992) ......................................................................... 8

24  *Feminist Women's Health Ctr. v. Blythe*

25      32 Cal. App. 4th 1641, 1674 n.8 (1995) ........................................ 16

26  *Fischer v. SJB–P.D. Inc.*

27      214 F.3d 1115, 1119, fn.4 (9th Cir. 2000) .................................. 9, 15

28

MOTION FOR ATTORNEY FEES                         5:23-CV-00540-RGK-SHK

*Flitton v. Primary Residential Mortg., Inc.*

    614 F.3d 1173 (10th Cir. 2010) ........................................................................ 15

*Fox v. Vice*, 563 U.S.

    826, 839 (2011) ................................................................................................ 15

*Franks v. Bowman Transp. Co*

    424 U.S. 747 (1976) .......................................................................................... 7

*French v. City of Los Angeles*

    EDCV 20-0416 JGB (SPx) ................................................................................ 13

*Gomez-Sanchez v. Sessions*

    No. 14-72506 (9th Cir. 2019) .......................................................................... 12

*Hensley v. Eckerhart*

    461 U.S. 424 (1983) ...................................................................................passim

*Jeffboat, LLC v. Office of Workers' Comp. Programs*

    553 F.3d 487, 490 (7th Cir. 2009) .................................................................... 10

*Keith v. Volpe*

    643 F.Supp. 37, 43-44 (C.D. Cal. 1985) ........................................................... 22

*Kerr v. Quinn*

    692 F.2d 875 (2d Cir. 1982) .............................................................................. 8

*Lanni v. State of New Jersey*

    259 F.3d 146, 149-50 (3rd Cir. 2001) .............................................................. 10

*Marroquin v. Unidentified LAPD Officer,*

    No. 221CV07607RGKJEM, 2023 WL 5505061, at *5 (C.D. Cal.

    Apr. 24, 2023), 2023 U.S. Dist. LEXIS 73971, *8-9 (C.D. cal.

    2023) ............................................................................................................ 13, 20

*Moreno v. City of Sacramento*

    534 F.3d 1106, 1112 (9th Cir. 2008) ............................................................ 15, 16

*Nadarajah v. Holder*

    569 F.3d 906 (9th Cir. 2009) ............................................................................ 12

MOTION FOR ATTORNEY FEES            5:23-CV-00540-RGK-SHK

*Paola French, et al. v. City of Los Angeles, et al.*

Case No. EDCV 20-0416 JGB (SPx) (February 21, 2024).......................11, 13

*Serrano v. Unruh*

32 Cal. 3d 621, 638 (1982).........................................................................14

*Smith v. City of La Verne*

23-cv-644-KK, 2024 U.S. Dist. LEXIS 176455, *9 (C.D. Cal.

September 4, 2024)......................................................................................13

*Thornberry v. Delta Airlines, Inc.*

676 F.2d 1240, 1245 (9th Cir. 1982)..........................................................22

*Torrance Unified School District v. Magee*

2008 U.S. Dist. LEXIS 95074 (C.D. Cal. Nov. 10, 2008) .............................11

*United Steelworkers ofAin. v. Phelps Dodge Corp.*

896 F.2d 403 (9th Cir. 1990)......................................................................13

*Valenzuela v. City of Anaheim*

Case No. SACV 17-00278-CJC (DFMx) (C.D. CA. 2023).......................11, 13

**STATUTES**

Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913 ....................10

# I.

# __INTRODUCTION__

After a three-day trial, on May 24, 2024, the jury returned a verdict in favor of Plaintiff William Enyart ("Plaintiff"), finding that Plaintiff established the elements of a Section 1983 claim against the County of San Bernardino.  The jury awarded Plaintiff $6,400,000 in damages.  (Exhibit 1.)  The jury's verdict was one of the largest *Monell* verdicts ever obtained involving inadequate correctional policies against the County of San Bernardino.  (Pena Decl., ¶5.)

By any measure, Plaintiff's counsel achieved an excellent outcome.  This verdict likely will result in reforms and policy/training implementation to ensure that an arrestee/inmate's critical medical information will be relayed from sworn staff to medical staff, especially since this case shed light on the County's failure to comply with Title 15 requirements.  Ultimately, this verdict will not only bring William's minor daughter financial security for the remainder of her life—the verdict will likely lead to reforms that prevent future in-custody injuries and deaths.

Notably, due to the implication of Plaintiff's claims, and the consequential effect the verdict will have on pending and future lawsuits against the County, Defendants chose to aggressively litigate this case, and continue to do so.  The case went through multiple dispositive motions, a motion for summary judgment, two Rule 50 motions, and a pending appeal in the Ninth Circuit.  (Exhibit 2.)  Despite both parties' efforts to resolve this case after the jury verdict, the Board of Supervisors rejected the settlement proposed by counsel for both parties.

As such, as the prevailing party in this matter, Plaintiff request that the Court order the County to pay his reasonable attorneys' fees and expenses related to this case (in addition to reimbursement for the separate costs addressed in Plaintiff's application to tax costs, see Exhibit 3).  Plaintiff additionally requests that the Court retain jurisdiction to consider supplemental fee and cost requests for work performed after the instant motion in defense of the judgment.  Specifically, as

6

detailed and justified below, Plaintiff requests that the Court order the Defendants to pay $1,031,220 in reasonable attorneys' fees and $42,900.85 in reasonable costs.

## II.

## **THE LEGAL STANDARD**

The request for attorney's fees is made under *Hensley v. Eckerhart*, 461 U.S. 424, 425 (1983) (holding a plaintiff may be considered a prevailing party if he succeeds on any significant issue in litigation which achieves some of the benefit the party sought).  "[A] prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. at 429 (internal quotation marks omitted).  "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id*. (quoting H.R. Rep. No. 94-1558, p. 1 (1976)).  Congress provided for fee awards under Section 1988 because it considered civil rights litigation to be a matter of the "highest priority" to the welfare of the nation.  *Franks v. Bowman Transp. Co*, 424 U.S. 747, 762-63 (1976).  "Punishment and deterrence are undeniably important purposes of Section 1988." *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988) (citations omitted).  The "overriding goal" of Section 1988 is "to reimburse with a reasonable attorney's fee those who as 'private attorneys general' take it upon themselves to invoke and thereby invigorate federal constitutional and statutory rights." *Id*.

The standard for the Court to use in exercising its discretion in awarding fees and costs to a prevailing defendant was set forth in the Supreme Court's decision in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978).  The Court explained the purpose behind the fee provision was to make it easier for a plaintiff of limited means to bring a meritorious suit to vindicate a policy Congress considered of the greatest importance.  *Id*. at 418.

Accordingly, based on the jury's favorable verdict, Plaintiff is entitled to attorneys' fees and costs as the prevailing party pursuant to 42 U.S.C. Section 1988.

7

1  *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards are designed to

2  "encourage the bringing of meritorious civil rights claims which might otherwise be

3  abandoned because of the financial imperatives surrounding the hiring of competent

4  counsel") (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)).

5  ### III.

6  ### PLAINTIFF IS THE PREVAILING PARTY

7  "A plaintiff must be a 'prevailing party' to recover an attorney's fee under §

8  1988.  A typical formulation is that 'plaintiffs may be considered 'prevailing

9  parties' for attorney's fees purposes if they succeed on any significant issue in

10  litigation which achieves some of the benefit the parties sought in bringing suit."

11  *Hensley*, 461 U.S. at 433.  Furthermore, a plaintiff "prevails" for purposes

12  of Section 1988 "when actual relief on the merits of his claim materially alters the

13  legal relationship between the parties by modifying the defendant's behavior in a

14  way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111-12

15  (1992).  Relief "'on the merits' occurs when the material alteration of the parties'

16  legal relationship is accompanied by judicial *imprimatur* on the change."

17  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532

18  U.S. 598, 605 (2001).  Judicial imprimatur can come in the form of an enforceable

19  judgment on the merits or a court-ordered consent decree.  *Id.*

20  Here, Plaintiff is the prevailing party as William Enyart succeeded on a

21  significant claim against the County thereby achieving the exact goal Plaintiff set

22  out to accomplish.  The crux of Plaintiff's complaint was that his family informed

23  every County personnel they encountered that he was a severe alcoholic and needed

24  appropriate treatment and monitoring.  (Exhibit 4, ¶¶75-81, 90, 95.)  To be certain,

25  Plaintiff alleged claims against those individuals his family exhaustively warned

26  about his alcoholism; however, it was clear to the jury each Individual Defendant,

27  and many more individuals the Enyart family spoke to over the phone (that could

28  not be identified during discovery), were not required or trained to pass along

critical information to medical staff.  Accordingly, securing a favorable verdict against the County for failing to implement policies and training requiring the communication and transmission of critical medical information strikes at the heart of the relief sought by Plaintiff.  The jury's $6,400,000 verdict equates to the "judicial imprimatur" required to establish relief on the merits and an alteration of the parties' legal relationship.  (Judgement was entered on June 24, 2024, see Exhibit 5.)  In sum, Plaintiff is the prevailing party.

**IV.**

### PLAINTIFF IS ENTITLED TO LODESTAR BASED ATTORNEYS' FEES

The initial determination of reasonable attorney's fees is calculated by multiplying the number of attorney hours reasonably expended on the litigation by a reasonable hourly rate.  This is commonly referred to as the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  The Supreme Court has made clear the lodestar calculation is a presumptively reasonable fee award.  *Id.* at 897; s*ee also Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119, n.4 (9th Cir. 2000).  The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  *Hensley*, 461 U.S. at 437.

    **A.**    ***The Hourly Rates of Plaintiff's Legal Team Are Appropriate Given Counsels' Skill, Experience and Reputation in the Civil Rights Community***

Reasonable rates under Section 1988 are to be calculated according to the prevailing market rates in the relevant legal community performed by attorneys of comparable skill, experience and reputation.  *Blum, supra*, at 893, 895 n. 11.  "Generally, the relevant community is the forum in which the district court sits."

9

*Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)[1].  Fee awards under Section 1988 should be equivalent to fees "in other types of equally complex Federal litigation, such as antitrust cases." *Hensley*, 461 U.S. at 447 (citing Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913).

"Such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992).  "When attorney's fees are awarded, the current market rate must be used.  The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3rd Cir. 2001).  "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n. 11.  Under these circumstances, plaintiffs' counsel is entitled to compensation at the hourly rate "for similar services of lawyers 'of reasonably comparable skill, experience, and reputation.'" *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

Ms. Pena and Ms. Jun graduated from law school in 2012 and have 12 years of civil rights experience as licensed attorneys.  Both Ms. Pena and Ms. Jun's requested rate is $800.  (See Pena Decl. ¶¶7, 24; Jun Decl., ¶13.)  Mr. McMullen

---

[1] Where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country. *Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009).  Given the limited number of civil rights attorneys in the generally and the highly specialized area of practice involved in this case, a national market, including the Southern and Northern District, should be considered.

MOTION FOR ATTORNEY FEES                    5:23-CV-00540-RGK-SHK

graduated in 2006 and has 18 years of experience. His requested rate is $975. (See McMullen Decl., ¶22.) Ms. Brunner's and Mr. Terrell's requested rate is $600. Plaintiff also seeks a reasonable fee of $200 for legal secretary Leanna Pierce. Ms. Pierce has been a legal secretary for over 20 years. (Pena Decl. ¶28.) All attorneys' time (including Ms. Pierce) has been specifically documented. All hours sought to be reimbursed were reasonably expended in every respect. (See Pena Decl. ¶¶22-23.)

To the support the rates requested by Danielle Pena, Grace Jun, and Joeseph McMullen, Plaintiff provides declarations and evidentiary support. First, Plaintiff submits declarations from six attorneys in the Southern California community with comparable skill, experience and reputations in civil rights to demonstrate each petitioning attorney's skill and reputation in the civil rights community. (See Declarations of Julia Yoo, Gene Iredale, Tim Scott, Barry Litt, John Burton, and Tom Beck, *generally*.) Each of those attorneys worked directly or indirectly with Grace Jun, Joe McMullen, and/or Danielle Pena, and know their work from personal experience and/or by their contributions to the civil rights community. For Sharon Brunner and James Terrell, Plaintiff relies on the fee award recently granted in *Donastorg v. City of Ontario, et al.,* and the Declaration of Dale K. Galipo. (See Galipo Decl., ¶¶4-6, *generally.*)

Second, the declarations from Carol Sobel and Barry Litt address the reasonableness of the rates requested. Ms. Sobel has been recognized as an expert on attorney fee rates in Southern California, and specifically in the Los Angeles area, on numerous occasions. (Sobel Decl., ¶14.) Ms. Sobel has been accepted as an expert to opine on the rates of attorneys in Los Angeles in multiple cases in the Central District. *See Paola French, et al. v. City of Los Angeles, et al.,* Case No. EDCV 20-0416 JGB (SPx) (February 21, 2024); *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. CA. 2023); *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. Nov. 10, 2008).

MOTION FOR ATTORNEY FEES                    5:23-CV-00540-RGK-SHK

(Sobel Decl., ¶¶14-15.)  Ms. Sobel has also been recognized by the Ninth Circuit in *Nadarajah v. Holder*, 569 F.3d 906, 912–14 (9th Cir. 2009) and *Gomez-Sanchez v. Sessions*, No. 14-72506 (9th Cir. 2019).  (Sobel Decl., ¶15.)

Ms. Sobel provides ample citations to a variety of sources to support the rates requested.  (Sobel Decl., *generally.*)  These include references to numerous other attorney fee awards in civil rights and consumer class actions relevant to Plaintiffs' counsels' years of practice.  (Sobel Decl. ¶¶20-30.)  As set forth in the sources cited and relied on by Ms. Sobel, the requested rates are consistent with rates approved for comparable work in Los Angeles.  With regards to Ms. Pena, Ms. Jun, and Mr. McMullen, Ms. Sobel relies on her review of 2023 and 2024 market rates, as well as reviewing recent fee awards in the Central District.  (Sobel Decl. ¶¶17-30.)  Ms. Pierce also relies on Ms. Sobel regarding the current market rates for a legal secretary with more than 20 years of experience. (Sobel Decl. ¶32.)  After reviewing recent fee awards granted in the Central District, Ms. Sobel ultimately opines the requested rates "are well within the range of reasonable market rates for comparably skilled and experienced attorneys."  (Sobel Decl. ¶31.)

In addition to Ms. Sobel's declaration, Plaintiff relies on the Declaration of Barrett S. Litt regarding the current Los Angeles market rate for civil rights attorneys.  Mr. Litt has been a champion of civil rights and public interest litigation since the 1980s.  (*See* Litt Decl., *generally*.)  According to Mr. Litt's declaration, the requested rate of Ms. Pena and Ms. Jun are in line with the current market rate for civil rights attorneys in the Los Angeles area with twelve years of experience. (*See* Litt Decl., ¶¶36-39.)  When compared to the commercial rates for attorneys with comparable experience, Ms. Pena and Ms. Jun's requested rates are drastically lower than the commercial market rates.  (*Id.*, ¶38.)

Moreover, "rate determinations in other cases, particularly those setting a rate for plaintiff's attorneys, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Ain. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.

12

1990). According to Exhibit B to Mr. Litt's Declaration, in 2024, Eric Valenzuela, of the Law Office of Dale Galipo, was awarded $800/hour in *French v. City of Los Angeles*, EDCV 20-0416 JGB (SPx) (2/21/24). (See Exhibit B to Litt Decl., pg. 19.) The court in *Smith v. City of La Verne*, 23-cv-644-KK, 2024 U.S. Dist. LEXIS 176455, *9 (C.D. Cal. September 4, 2024) awarded Denisse Gastelum, a 2011 graduate, $850/hour. In *Marroquin v. Unidentified LAPD Officer*, No. 221CV07607RGKJEM, 2023 WL 5505061, at *5 (C.D. Cal. Apr. 24, 2023), 2023 U.S. Dist. LEXIS 73971, *8-9 (C.D. cal. 2023), this Court awarded Kevin Conlogue, a 2012 admittee, $725/hour in a 2023 order. Moreover, in an order this year on February 21, 2024, in the matter of *Paola French et al. v. City of Los Angeles et al.*, case no. 20-cv-00416-JGB-SP, another court in the Central District awarded attorney fees for a 2006 graduate (John Fattahi) at $975/hour. The same court awarded fees for a 2012 graduate (Eric Valenzuela) at $800/hour. A true and correct copy of the fee order from *French v. City of Los Angeles* is attached hereto as Exhibit 6.

Regarding Ms. Brunner and Mr. Terrell, they rely on the Declaration of Dale Galipo to establish their reputation and prior work in civil rights cases. (See Exh Galipo Decl., ¶¶4-6.) In addition, Plaintiffs submit evidence of a 2021 award in *Donastorg v. City of Ontario, et al.* In that case, Mr. Terrell and Ms. Brunner were awarded an hourly rate of $600 and are not seeking any increase. (Exhibit 7.)

In sum, based on the various declarations submitted in support of Plaintiff's Counsel, and based on the current market rates and recent Central District rulings, the requested rates for Plaintiff's Counsel are reasonable and based on current market rates in the Los Angeles area.

## B. *Defendants Aggressively Litigated This Case, And Continue to Do So*

The reasonableness of hours must be assessed with reference to defense litigation tactics. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v.*

13

*Unruh*, 32 Cal. 3d 621, 638 (1982).  Defendants unsuccessfully filed multiple dispositive pleadings, seeking to dismiss all claims against all defendants at various stages of litigation.  Even after the jury's verdict, two Rule 50 motions, and two motions for a new trial, Defendants have filed a notice of appeal.  Throughout the litigation, Plaintiff expressed a willingness to consider a reasonable settlement.  Defendants' long-standing position throughout litigation was the case had little value, as was reflected in their arguments to the jury and their highest settlement offer being <u>fifty-one</u> times lower than the jury's verdict.  (Pena Decl., ¶31.)

Thus, Plaintiff's attorneys correctly anticipated the case would have to be tried and took the steps to do so successfully.  This case required extensive effort at every stage, obtaining and scrupulously analyzing all the relevant documents, surveillance footage and audio recordings; deposing defense witnesses and defending the depositions of plaintiffs; extensive motion work; trial preparation, trial, and post-trial work.  At trial, Plaintiff bore the burdens of proof and persuasion.  Of necessity, prevailing in this case required convincing the jury the Defendants' recitation of events was not credible, and the County did not maintain a required policy, which necessitated, in part, the retention of three experts.

Even after the verdict, with another lawsuit pending, Plaintiff proposed a reasonable global settlement, but the County Board of Supervisors rejected the offer recommended by its own attorneys.  As such, as detailed below, the hours expended were reasonable and reflective of the overall posture of the case.

### C.     *The Number of Hours are Reasonable and Necessary*

As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "churning" a case: "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning [...]" *Moreno v. City of Sacramento*,

14

534 F.3d 1106, 1112 (9th Cir. 2008).  Accordingly, they should be fully compensated for taking the steps they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id*. (emphasis added).

The petitioning party's burden is satisfied by listing hours spent and "identifying the general subject matter of [the] time expenditures" *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000).  "The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 839 (2011).  While it is not required, Plaintiffs' counsel detailed time entries thoroughly describe each billed task.  "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended."  *Hensley*, supra, at 437, fn. 12; *Flitton v. Primary Residential Mortg., Inc*., 614 F.3d 1173, 1178 (10th Cir. 2010) ("counsel should identify the general subject matter of his time expenditures").

In support of their motion, Plaintiff presents declarations of counsel attesting to the reasonableness of the fees requested, accompanied by task-based itemized statements of time expended derived from contemporaneous billing records.  Those detailed statements reflect the date, amount, and nature of work the attorneys performed.  Counsel staffed the matter efficiently, allocating discrete responsibilities between the attorneys and professionals involved.  For example, but for certain tasks such as discovery review and opposing Defendants' motion for summary judgment, Plaintiff's Counsel divided the tasks among the attorneys working on the case at any given time (see discussion below) and did not double bill for motion work or taking or defending depositions.  (Pena Decl., ¶22.)  With that in mind, Plaintiffs' Counsel made painstaking effort to review the time of each attorney and eliminate unnecessary, duplicative, or unproductive hours.  *Id*.

MOTION FOR ATTORNEY FEES                    5:23-CV-00540-RGK-SHK

Lastly, Plaintiff defeated Defendants' motion for summary judgement and did so with only two weeks to review critical evidence in the form of 100+ hours of surveillance footage and 15+ hours of audio recordings. At trial, the jury returned a substantial verdict. Plaintiff obtained this relief in the face of a grossly belated document production consisting of 300 medical policies that were produced five days before trial. Plaintiff's Counsel reviewed the policies and ensured each expert reviewed any relevant policy and presented those opinions to the jury. Such relief entitles Plaintiff's counsel to a fully compensatory fee: "Where a plaintiff has obtained excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Feminist Women's Health Ctr. v. Blythe*, 32 Cal.App.4th 1641, 1674 n.8 (1995).

### D.    *Plaintiff's Counsel Has Exercised Reasonable Billing Judgment*

In *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), the Ninth Circuit explained certain factors upon which district courts may not rely in modifying fee awards. First, although courts may reduce awards based on unnecessary duplication of efforts, they must take into account circumstances under which duplicative work is necessary. *Id*. at 1112. Second, courts may not "set the fee based on speculation as to how other firms would have staffed the case." *Id*. at 1114. The court noted the difficulties of comparing staffing decisions of small or solo civil rights firms to that of large commercial litigation firms in light of the vast differences between the two models. *Id*. at 1115. The court explained such a comparison may not serve the "statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do civil rights work." *Id*. Finally, the Court should not engage in "double counting," by reducing both the hourly rate and the total number of hours. *Id*.

MOTION FOR ATTORNEY FEES                          5:23-CV-00540-RGK-SHK

Plaintiff's attorneys have exercised reasonable billing judgment in several ways.  First, attorney hours that were duplicative, unnecessary, or *de minimis* have not been claimed.  This includes hours solely associated with the second lawsuit.  Notably, Plaintiff's Counsel reduced the amount of hours spent reviewing the 100+ hours of surveillance footage and 15+ hours of audio recordings, even though each video file and audio recording was imperative to this case, William's cause of death, the *Monell* claim, and to the experts' overall opinions.  (Pena Decl., ¶22.) Second, hundreds of combined hours were eliminated out of abundance of caution.  (*Id.* at ¶21.)  For example, Plaintiff's Counsel only accounted for the hours of one attorney taking or defending the 15 depositions in this case, even though one or more plaintiff's attorneys were always present for all depositions.  *Id.* As such, Plaintiff's Counsel took all measures to avoid double-billing.  (*Id.* at ¶22.)  Trial preparation for a three-day jury trial was intense with a dozen witnesses requiring tactical precision and focused forethought.  During this entire period, Plaintiff's Counsel was efficient by dividing responsibilities according to the attorney's expertise, familiarity with relevant evidence, and responsibility at trial.  *Id.*

Furthermore, Plaintiff has reduced their time by the following: 1) approximately 50 combined hours of discussions with the clients; 2) approximately 100 combined hours of discussions amongst the legal team (*Id.* ¶22); and 3) as detailed below, approximately 60 combined hours of attorneys' time spent attending trial.  (Brunner Decl.*,* ¶4; Terrell Decl., ¶6.)

Importantly, Plaintiff acknowledges five attorneys have worked on this case, and at first blush that may seem like the case was overstaffed.  However, the five attorneys did not work on the case at the same time, as reflected in the attorneys' respective timesheets.  (Pena Decl. ¶23.)  Ms. Pena has been lead counsel throughout and expended the majority of the hours litigating this case from inception to post-trial motions.  Ms. Brunner and Mr. Terrell were the originating attorneys and requested Ms. Pena join as Co-Counsel due to her experience and

17

success with in-custody death cases.  (See Brunner Decl. ¶2.)  Ms. Brunner and Mr. Terrell were involved throughout litigation and assisted in taking and defending the majority of depositions, reviewing discovery, and opposing Defendants' motion for summary judgment.  Ms. Brunner and Mr. Terrell did not actively participate in trial; as such, though present during the entire trial they did not bill for their time attending trial. Ms. Jun joined the trial team in April 2024.  While Ms. Pena was in trial on another civil rights matter, Ms. Jun took lead in meeting and conferring with defense counsel, preparing for and defending expert depositions, and preparing pre-trial documents, such as the memorandum of contentions, jury instructions, verdict forms, final pretrial conference order, etc.  Mr. McMullen joined the trial team approximately two weeks prior to trial and was responsible for the cross-examinations of all Defendants, as well as the preparation and presentation of Plaintiff's opening statement and primary closing argument.  Due to the strict time limitations imposed by the Court, Ms. Pena, Ms. Jun, and Mr. McMullen took a "divide and conquer" approach when distributing trial tasks and responsibilities. (Pena Decl. ¶23.)

Accordingly, as explained in detailed in the attached declarations, the following hours were reasonably expended in pursuit of the results obtained:

| Attorney | Number of Hours | Rate | Lodestar |
|---|---|---|---|
| Danielle Pena | 695.6 Hours | $800 | $556,480 |
| Grace Jun | 249.2 Hours | $800 | $199,360 |
| Joe McMullen | 132.8 Hours | $975 | $129,480 |
| Sharon Brunner | 73.4 Hours | $600 | $44,040 |
| James Terrell | 110.9 Hours | $600 | $66,540 |
| Leanna Pierce | 176.6 Hours | $200 | $35,320 |
| **Total** | | | **$1,031,220** |

Notably, with regard to exercising reasonable judgment, despite the $6,400,000 verdict, the undesirability of the case in the form of costs associated with litigation, not certain to be returned, and the Court's very high standard for trial efficiency requiring meticulous preparation by counsel, Plaintiff could reasonably but do not seek a multiplier or upward enhancement.  The requested rates and hours conservatively account for the quality and performance of Plaintiff's Counsel.  (Pena Decl., ¶24.)

## V.

## PLAINTIFF'S REQUESTED FEES SHOULD NOT BE REDUCED FOR NOT SUCCEEDING ON CO-PLAINTIFFS' CLAIMS

Plaintiff anticipates the County will argue the requested fees should be reduced because Plaintiff only succeeded on one of six claims at issue at trial. Notably, this motion is brought on behalf of the decedent, Willaim Enyart. Mr. Enyart's estate only alleged two claims against Defendants and succeeded on one of two. Regardless, the Court in *Hensley* held "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. "A plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991); *see also Hensley*, 461 U.S. at 440 ("A plaintiff who has won substantial relief should not have attorney's fee reduced simply because the district court did not adopt each contention raised.")

The *Hensley* Court established a two-part analysis for determining attorney's fees where plaintiff has achieved limited success.  461 U.S. at 434-35.  In the first step, the Court must consider whether the "plaintiff[s] fail[ed] to prevail on claims that were unrelated to the claims on which [they] succeeded." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  Claims are unrelated if they are "entirely distinct and separate from the claims on which the plaintiff prevailed." *Id.*  If a

19

plaintiff's claims for relief "involve a common core of facts," the lawsuit is not "viewed as a series of discrete claims," even if the claims contain differing legal theories. *Id.* The second step is to "consider whether the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* In making this assessment a court focuses "on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation." *Id. See also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008); *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 901-902 (9th Cir. 1995); *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D. Cal.1974).

This Court recently rejected a similar argument made in *Marroquin v. Unidentified LAPD Officer*, No. 221CV07607RGKJEM, 2023 WL 5505061, at *4 (C.D. Cal. Apr. 24, 2023). In *Marroquin*, Defendants argued for a fee reduction because the plaintiff only prevailed on two of eight claims. This Court rejected the argument finding the unsuccessful and successful claims "arose from the same incident" and "were not entirely distinct and separate for attorneys' fee purposes." *Id.* at *4. This Court also found no indication the $500,000 verdict was an unsatisfactory result and granted a fee award in excess of the verdict.

In this case, Plaintiff's successful *Monell* claim is entirely related, and in fact, dependent upon, the claims by Co-Plaintiffs against the individual Defendants that failed to relay William's critical medical information to medical staff, i.e. the unsuccessful claims. By Defendants' own admission, "the evidence presented at trial [to support the *Monell* claim] related only to the actions of the four individual officers …" (Exhibit 8, 6:12-13.) There is a common core of facts based on the very actions of the individual Defendants (and others that were not identified), which provided the evidentiary basis for the jury's conclusion that policies and training requiring communication of an arrestee/inmate's critical medical information *did not exist*. In other

MOTION FOR ATTORNEY FEES                    5:23-CV-00540-RGK-SHK

words, Plaintiff would not have been able to establish a policy of inaction without focusing on the conduct of the individual Defendants and other jail personnel that answered the Enyart family's 32 phone calls.

Regarding Plaintiff's achieved level of success, the jury found the County was deliberately indifferent based on its failure to implement policies and training accounting for the communication of critical medical information to medical staff.  Plaintiff established through his correctional experts that national standards, the jail's own experience, and California regulations require such a policy.  *See* Cal. Code. Regs. Tit. 15 § 1050. Moreover, the jury awarded a historic $6,400,000 verdict against the County based on a *Monell* claim that was more than <u>fifty-one</u> times the Defendants' last settlement offer.  *See Curtin v. Cty. of Orange*, 2018 U.S. Dist. LEXIS 233110, *37 (C.D. Cal. 2018).  Most importantly, this verdict will likely bring about policy and training reform that will prevent future injuries and/or deaths.

Aside from what was identified above, the remaining requested hours cannot be divided or distinguished on a claim-by-claim basis as the claims are nearly identical in work-up and preparation for trial, especially because the evidence to support the *Monell* claim was obtained by litigating the individual claims.  (Pena Decl., ¶22.)  The discovery devices used cannot be separated between the successful and unsuccessful claims as the questions and demands spoke to the same facts, evidence, legal theories, witnesses, and defendants.  All the discovery requests, depositions and motions the parties made would have occurred even in the absence of the causes of action against the individual Defendants because Plaintiff would have to establish causation of his death in connection with Plaintiff's *Monell* theory.  As evidenced by the verdict, investigation of each claim resulted in excellent overall success.  Accordingly, because the majority of the attorneys' time was devoted generally to the litigation as a whole, it is impossible to divide the

21

hours by each claim.  As such, this case should not be viewed as a series of discrete claims.  Instead, the Court should focus on the significance of the overall relief obtained in relation to the hours reasonably expended.  *Hensley* at 435.

Accordingly, Plaintiff should be awarded reasonable attorney's fees—without reduction—because Plaintiff succeeded on a significant issue against the County thereby accomplishing the exact goal Plaintiff set out to achieve.

**VI.**

**PLAINTIFFS' LITIGATION EXPENSES, WHICH WERE REASONABLE AND NECESSARY, ARE FULLY RECOVERABLE**

Under 42 U.S.C. Section 1988, litigation expenses that are "necessary to the effective and successful representation of the plaintiffs' interests. . . are authorized for inclusion in a reasonable attorneys' fee award." *Keith v. Volpe*, 643 F.Supp. 37, 43-44 (C.D. Cal. 1985), aff'd. 833 F.2d 850 (9th Cir. 1987).  Because it was Congress' intention to "allow plaintiffs to recover the full costs of litigation," *Thornberry v. Delta Airlines, Inc*., 676 F.2d 1240, 1245 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983), a "reasonable attorney's fee" under Section 1988 necessarily includes compensation for the various "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee-paying client." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216, fn. 7 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).

The litigation expenses claimed by Plaintiff as part of this motion amount to a total of $20,856.22.  (Pena Decl., ¶29.)  In addition to this number, Plaintiff also requested $22,044.63 in the unopposed Application to Tax Costs, filed on July 8, 2024. (Exhibit 3.)  Accordingly, the total amount of reasonable costs and expenses in this case amount to $42,900.85.  All of these were reasonable and necessary in the litigation of this case.  (Pena Decl., ¶29.)

MOTION FOR ATTORNEY FEES                                    5:23-CV-00540-RGK-SHK

## VII.

## CONCLUSION

The requested billing rate is appropriate. The hours expended were reasonable and necessary. The total amount claimed is reasonable in light of the overall result and the manner in which the trial was conducted. The ligation expenses are fully recoverable as well as reasonable.

It is respectfully submitted the Court should therefore award attorney's fees and expenses as follows:

| | |
|---|---|
| Attorney's Fees | $1,031,220 |
| Litigation Expenses | $42,900.85 |

**Respectfully submitted,**

**PHG Law Group**

Dated: October 30, 2024                    by:   */s/ Danielle R. Pena*
Danielle R. Pena, Esq.
dpena@PHGLawGroup.com
Attorneys for Plaintiffs

## CERTIFICATION

The undersigned, counsel of record for Plaintiffs Frances Enyart, Gregroy Enyart, A.E. by and through her Guardian Ad Litem, Amanda Kelley, individually and as successor in interest to the Estate of William Enyart, (collectively "Plaintiffs"), certifies that this brief contains 5,575 words, which complies with the word limit of L.R. 11-6.1. Additionally, counsel certifies that this brief contains less than 20 pages, which complies with the page limit of Judge Klausner's Standing Order.

**PHG Law Group**

Dated: October 30, 2024                    by:   */s/ Danielle R. Pena*
Danielle R. Pena, Esq.
dpena@PHGLawGroup.com
Attorneys for Plaintiffs

23